## Case No. 16,676.

### UNITED STATES v. WHITE.

[5 Cranch, C. C. 73.] 1

Circuit Court, District of Columbia. Nov. Term, 1836.

ARSON — PEREMPTORY CHALLENGES — CHANGE OF VENUE—EVIDENCE—ACCESSORIES—LIMITATION—CROSS-EXAMINATION OF WITNESSES—ARREST OF JUDGMENT—DEMURRER—PLEADING ORE TENUS—VERDICT.

1. Arson is not a capital offence in the District of Columbia, and therefore the defendant is not entitled to a peremptory challenge, in the county of Washington.

2. When the defendant. in a criminal prosecution. has offered himself ready, and pressed for trial in the county of Washington, the court will not afterwards. when the cause is called for trial, change the venue upon the motion and affidavit of the defendant, suggesting that a fair and impartial trial cannot be had in the county of Washington. Under such circumstances it is a motion to the discretion of the court.

3. In an indictment for burning the treasury building of the United States, the prosecutor was not permitted to prove that another person than the defendant confessed that he burnt it, in order thus to prove that the fire was not accidental.

4. In misdemeanors there are no accessories; all are principals.

1 [Reported by Hon. William Cranch, Chief Judge.]

5. In misdemeanors the limitation is two years.

6. If a statute punishes that. as a misdemeanor. which. at common law, was a felony. the limitation of a prosecution, under that statute, is that of misdemeanor, and not that of felony.

7. The limitation is applicable to misdemeanors created by statute subsequent to the act of limitation.

8. The defendant is not entitled to the benefit of the limitation, if within the two years he left any place, or concealed himself. to avoid detection or punishment for any offence; but it is not necessary that the United States should have known that he was the offender.

9. A party, in cross-examining a witness, has not a right to ask him any question tending to degrade him, unless it be in relation to a fact in issue in the record.

10. It is not sufficient ground of arrest of judgment. that it appears. upon the face of the indictment and the record. that the indictment was not found within the time of limitation.

11. It is not universally true that what would be fatal upon demurrer would be equally fatal in arrest of judgment. Upon demurrer the court decides upon the whole record as it then appears; but upon a motion in arrest of judgment the court decides upon the whole record as it then appears.

[Cited in U. S. v. White, Case No. 16,677.]

12. There may be a prima facie cause of demurrer which may be removed by the subsequent pleadings.

13. Where the pleadings, in a criminal cause, are ore tenus, the judgment of the court must be the same as if they were in writing, and spread upon the record.

14. After a general verdict. the court is bound to presume that the parties respectively availed themselves of their rights, and that every thing was alleged and proved which they had a right to allege and could prove under that issue.

15. Limitation may be given in evidence by the defendant under the general issue in a criminal cause; and the United States may give in evidence the fact that the defendant fled from justice, and therefore was not entitled to the benefit of the limitation.

[Cited in U. S. v. Six Fermenting Tubs, Case No. 16,296.]

16. The court, upon a motion in arrest of judgment, is bound to presume that every thing which was necessary to support the verdict, and which could be proved under the issue, was proved to the satisfaction of the jury.

Indictment for burning the treasury building of the United States. The first count charged that the defendant [Henry H. White], on the 30th of March, 1833, "with force and arms, at the county aforesaid, a certain public building called the treasury office of the United States, situate in the city of Washington, in the county and district aforesaid, one of the cities of the District of Columbia, being one of the public buildings in the said city of said district, belonging to the United States, did maliciously and wilfully burn, against the form of the statute, in such case made and provided, and against the peace and government of the United States." The second count charged that the defendant, "on the day and year aforesaid, at the county aforesaid, with force and arms, on the night

of the said day, a certain house, called the treasury office of the United States, in which certain persons and the clerks and watchmen in the employment of the United States, did reside and lodge, belonging to the United States, situate in the said county and district, feloniously, wilfully, and maliciously did set fire to, and burn, and consume, against the peace and government of the United States." The third count is in these words: "And so the jurors aforesaid, upon their oath aforesaid, further present that the said Henry H. White, on the day and year aforesaid, at the county aforesaid, with force and arms, on the site of a certain needful building belonging to the United States, being the treasury office of the United States, the site whereof was ceded to the United States, and under their jurisdiction, being in the county and district aforesaid, a certain dwelling-house, wilfully and maliciously did burn, against the form of the statute in such case made and provided, and against the peace and government of the United States."

By the third section of the act of congress of the 2d of March, 1831 (4 Stat. 448), entitled "An act for the punishment of crimes in the District of Columbia," it is enacted, "that every person duly convicted of the crime of maliciously, wilfully, and fraudulently burning any dwelling-house, or any other house, barn, or stable adjoining thereto, or any store, barn, or outhouse having goods, tobacco, hay, or grain therein, although the same shall not be adjoining to any dwelling-house; or of maliciously and wilfully burning any of the public buildings, in the cities, towns, or counties of the District of Columbia, belonging to the United States, or the said cities, towns, or counties," &c., "or as being accessory thereto, shall be sentenced to suffer imprisonment and labor, for a period of not less than one, nor more than ten years, for the first offence," &c. By the act of congress of the 3d of March, 1825, c. 65 (4 Stat. 115), entitled "An act more effectually to provide for the punishment of certain crimes against the United States, and for other purposes," section 1, it is enacted, "that if any person or persons within any fort, dockyard, navy-yard, arsenal, armory, or magazine, the site whereof is ceded to and under the jurisdiction of the United States; or on the site of any light-house or other needful building belonging to the United States, the site whereof is ceded to them and under their jurisdiction as aforesaid, shall wilfully and maliciously burn any dwelling-house, or mansion-house or any store, barn, stable, or other building, parcel of any dwelling-house, or mansion-house, every person so offending, his or her counsellors, aiders, and abettors, shall be deemed guilty of felony, and shall, on conviction thereof, suffer death." And by the second section it is enacted, "that if any person or persons, in any of the places aforesaid, shall wilfully and maliciously set fire to or burn any arsenal," &c., "or any other build-

ing not mentioned in the first section of this act, or any ship or vessel," &c. &c., "every person so offending, his or her counsellors, aiders, and abettors, shall be deemed guilty of felony, and shall, on conviction thereof, be punished by fine, not exceeding five thousand dollars, and by imprisonment and confinement to hard labor, not exceeding ten years, according to the aggravation of the offence."

The first count is under the act of congress of the 2d of March, 1831, usually called the "Penitentiary Act." The second and third counts seem to have been framed under the first and second sections of the act of the 3d of March, 1825, c. 67.

W. L. Brent, upon the affidavit of the defendant "that a fair and impartial trial cannot be had in Washington county," moved the court to transfer the cause to the county of Alexandria for trial.

F. S. Key, for the United States, objected that the defendant about a week ago offered himself ready, and pressed for a trial, but as the case of Richard White, for the same offence, stood before it upon the docket, and this defendant refused to be tried at the same time, the court then ordered the jury to be sworn in Richard H. White's case, which has occupied the whole of the intermediate time. The witnesses are all here. The jury in Richard's case have not yet returned a verdict. It is an application to the discretion of the court.

Mr. Brent, in reply, suggested that the trial of Richard White had prejudiced the public mind.

THE COURT (nem. con.) refused to change the venue.

Mr. Brent then moved for a continuance of the cause to the next term, upon affidavit of the defendant that he did not know that Knott would be a witness; and that he would swear that he saw Richard H. White in Washington on the morning after the fire. The affidavit further stated that he could prove by the landlady of a tavern between Rossburgh and Baltimore that the defendant was in her house about eight o'clock of the morning of the fire; and by the keeper of a tavern in Baltimore that he arrived there in the forenoon, and staid there till Tuesday morning.

THE COURT (nem. con.) refused to continue the cause, as these witnesses were known to the defendant at the time of his arrest; and he had already summoned witnesses to prove an alibi, and the others could only corroborate.

Mr. Brent, in cross-examining Hicks, a witness, asked him whether he was arrested for counterfeiting money.

MORSELL, Circuit Judge, said he thought the question ought not to be put.

CRANCH, Chief Judge, said he had some doubt upon that point.

THRUSTON, Circuit Judge, said he should like to hear the authorities.

Mr. Brent cited Starkie, pt. 2, pp. 138–145;

Rosc. Ev. 135; Holding's Case, at the Old Bailey in 1821.

Mr. Key, contra, cited Rosc. Ev. 132. 140; De Sailly v. Morgan, 2 Esp. 691; Watson's Case, in 2 Starkie, 157; Rose v. Blakemore, Ryan & M. 384; Lloyd v. Passingham, 16 Ves. 64.

THE COURT (nem. con.) was of opinion that the party has not a right to ask of a witness, in cross-examination, any question tending to degrade him, (unless it be in relation to a fact in issue in the record. Quære.)

Mr. Brent, after the evidence on the part of the United States had been given, prayed the court to instruct the jury that there was no evidence given to support the second and third counts; but

THE COURT refused to give the instruction.

Mr. Key, for the United States, offered to prove by the witness, Hicks, that Richard H. White confessed that he burnt the treasury building, in order to prove that the building was burnt by design, and therefore that an offence had been committed; but

THE COURT (THRUSTON, Circuit Judge, contra) refused to suffer the evidence to be given.

THE COURT having given, in this cause, the same instruction respecting principal and accessory, Mr. Key contended that it applied only to the common-law count, as the other two counts were for misdemeanors, in which all are principals.

Mr. Brent, contra, contended that, as the third section of the penitentiary act made a distinction between principal and accessories, even in cases of misdemeanor, the indictment should state in which character the defendant is charged.

MORSELL, Circuit Judge, said that in misdemeanors all are principals. The statute did not alter the nature of the offense; and accessories, in misdemeanor, must be indicted as principals.

CRANCH, Chief Judge, said, such is the opinion of the court. The third section of the penitentiary act enumerates several offences, some of which are felonies, to which there may be accessories; it was proper therefore, at the close of the enumeration, to say, that every person duly convicted of any of those offences, "or as being accessory thereto," shall be sentenced, &c. Those words are applicable only to those of the previously enumerated offences, to which there can, by law, be accessories.

THRUSTON, Circuit Judge, said that he was opposed to the instruction altogether, because there was no evidence that the defendant was not present at the burning.

J. R. Key, for the United States, contended that as to the second count, (which he considered as charging a capital offence at common law,) the limitation was three years. The thirty-first section of the statute of April 30, 1790 [1 Stat. 112], relates to offences which were then capital, and if they had been enumerated in the section, instead of being referred to by a general description. arson would have been specifically named; and then prosecutions for arson would be limited to three years, in whatever manner the offence might be afterwards punishable. If it be not now a capital offence in this District, it is because its punishment has been changed by the penitentiary law for this District, either in the first, third, or fourteenth section. But the nature of the offence is not changed, nor the limitation of the time in which the offence may be prosecuted; for by the sixteenth section, "every matter not provided for" by that act is to remain as theretofore.

R. J. Brent, contra. In U. S. v. Mayo [Case No. 15,755], and [Adams v. Woods], 2 Cranch [6 U. S.] 336, it is decided that the limitation of 1790, is applicable to offences created after that act, and therefore does not apply exclusively to crimes as they then existed. If an offence, then not capital, has been since declared to be capital, the limitation would now be three years. As to two of the counts the question is not applicable, for they were only misdemeanors at common law, and the other count is not for arson. When the defendant offered a peremptory challenge, the court said that it was no longer a capital offence, and that therefore, a peremptory challenge could not be allowed.

Mr. Key, in reply, cited 8 Wheeler, Abr. 152, "Statute," § 5; and The Argo [Case No. 516].

THE COURT, (THRUSTON, Circuit Judge, doubting,) was of opinion that the limitation was two years only. And in answer to a prayer made by the defendant's counsel, THE COURT instructed the jury that if they find, from the evidence, that no indictment was found against the defendant within two years from the time the offence was committed in this case, then the statute of limitations is a bar; unless they also find that the prisoner left this district, or any other place within the United States, for the purpose, or with the view to avoid detection or punishment for the offence of burning the treasury building, or for any other offence; or that he concealed himself in any other way, for said purpose, or to prevent detection at any time within the said two years.

CRANCH, Chief Judge, stated that he concurred in this opinion as far as it went; but that it did not go far enough. He thought that if, at any time during the two years, the defendant went out of the United States, or from one place to another within the United States, or concealed himself to avoid arrest or detection for this or any other offence, the limitation did not run in his favor, unless afterwards within the two years, he appeared openly and notoriously, so that, with ordinary diligence, he might have been arrested in the United States; and so continued for two years after such concealment, &c. or until his arrest.

THRUSTON, Circuit Judge, did not concur, for the reasons stated in his written opin-

ion delivered at the trial of U. S. v. White [Case No. 16.675].

THE COURT (THRUSTON, Circuit Judge, contra) was also of opinion, that it was not necessary, in order to the defendant's having the benefit of the limitation, that the United States should have known that he was the person who burnt the treasury building.

Verdict guilty.

Mr. R. J. Brent, moved in arrest of judgment. because the indictment states that the offence was committed on the 30th of March, 1833. and the record shows that the indictment was found on the 30th of March, 1836, so that it appears upon the record that the offence was committed more than two years before the indictment was found; and it does not appear by the record that the defendant was a person "fleeing from justice."

Mr. Brent referred to U. S. v. Watkins [Case No. 16.649], in this court at May term, 1829, where the court decided that the objection was fatal upon demurrer. One of the objections in that case was, "that advantage of the limitation cannot be taken upon demurrer, because the United States would be thereby precluded from replying, according to the proviso of the act, that the defendant fled from justice within the two years. But the court answered, "that. however, it may be in practice, yet in theory, and by law, if judgment upon demurrer to an indictment for a misdemeanor be given against the defendant, it is a peremptory judgment of condemnation; and although in practice the court will often rather intimate its opinion, than pronounce sentence; and will permit the defendant to withdraw his demurrer, and plead to issue; yet upon the question whether the defendant may avail himself, by demurrer, of a bar apparent upon the record, the court must consider what would be the legal consequence of a judgment upon the demurrer; and when we see that it may be a peremptory judgment, and that the defendant has a good defence upon the face of the record, the court cannot deprive him of the benefit of it. We therefore think that the defendant has a right, upon demurrer, to avail himself of the statute of limitations. It has been said that the United States would be thereby precluded from replying the flight of the defendant, if such should have been the fact. But that is not the fault of the defendant. The United States have put themselves in that situation by stating the fact to have happened beyond the day of limitation. They were not bound so to do, for they might have laid the day to have been within the time of limitation, and proved a different day at the trial; and if the day proved should be beyond the time of limitation, and the United States could have shown that the defendant fled within the two years after committing the offence, they might have given it in evidence, or they might have stated, in the indictment, the true time and any facts which existed, and went to show that the defendant could not avail himself of the limitation." The point,

therefore, is already decided by this court, that the objection is good on demurrer; and what is good on demurrer is good in arrest of judgment. 1 Chit. 285, 442, 662; Lee v. Clark, 2 East, 333; and Watkins' Case [Case No. 16,649], in which this court said that "upon a motion to quash. or in arrest of judgment, the defendant may avail himself of all the matters which he could upon demurrer." It does not appear in the record that the defendant fled from justice, but it does appear upon the face of the record that the defendant had a legal defence, and, therefore, the court cannot render judgment against the defendant. There is no allegation in the proceedings which will let in the evidence of the defendant's fleeing from justice. Piatt v. Vattier. 9 Pet. [34 U. S.] 415.

J. R. Key, and F. S. Key, for the United States, contra. The United States are not bound to show the day to be within the time of limitation. It is a matter of defence to be shown by the defendant. The doctrine in Chitty is only applicable to a statute which creates the offence, and directs that it shall be prosecuted in a certain time; not to a statute of limitations applicable to all misdemeanors. It relates to convictions on penal statutes, and summary proceedings in inferior jurisdictions. There is a difference between a demurrer and a motion in arrest of judgment, in this; that after verdict, it will be presumed that a day was proved within the time of limitations. The case in 9 Peters, only decides that in a case in equity, there must be allegations as well as proofs. But the defendant, on the trial claimed the benefit of the limitation, and the United States gave evidence that the defendant was a person fleeing from justice, and therefore had no right to claim that benefit; and the whole matter was submitted to the jury. All this will appear in the record, and the court will decide upon the whole record. 1 Chit. 284, 285; Lee v. Clarke, 2 East, 333; Rex v. Bryan, 2 Strange, 1101; Archb. Cr. Pl. 53.

Mr. Brent, in reply, cited Rex v. Fisher, 2 Strange, 865.

CRANCH, Chief Judge, delivered the opinion of the court.

The indictment in this case (which was for burning the treasury building of the United States,) charged the offence to have been committed on the 30th of March, 1833, and the indictment was not found until the 30th of March, 1836, so that more than two years appeared upon the record to have elapsed between the commission of the offence, and the finding of the indictment. By the 31st section of the act of congress of the 30th of April, 1790 (1 Stat. 112), it is enacted, that no person "shall be prosecuted, tried, or punished, for any offence not capital, nor for any fine or forfeiture under a penal statute, unless the indictment or information for the same shall be found or instituted within two years from the time of committing the offence, or incur-

ring the fine or forfeiture aforesaid; provided that nothing herein contained shall extend to any person or persons fleeing from justice." The defendant pleaded the general issue, and the jury found a general verdict against him. The defendant, by his counsel has moved in arrest of judgment, upon the ground that it appears on the record that the indictment was not found within two years after the commission of the offence.

On the part of the defendant it was contended that when the time for the prosecution of an offence is limited, the time, as averred in the indictment, should appear to be within the limit (1 Chit. Cr. L. 223, and this court so decided in the case of U. S. v. Watkins in 1829 [supra]; when they sustained a demurrer to the indictment against him, upon the transaction with Hambleton; and it was further contended that whatever objection would have been good on demurrer, is good upon a motion in arrest of judgment. 1 Chit. 442. I am not disposed to disturb the decision in Watkins' Case. I think it was right. But there seems to be a great difference between a demurrer directly to the indictment, before any other pleadings have been had in the case, and a motion in arrest of judgment, after all the pleadings have been made up, issue joined and verdict thereupon. In the first case, the judgment must be upon the whole record as it then appears; and upon a motion in arrest of judgment after verdict, the judgment must be upon the whole record as it then appears. There may be a prima facie cause of demurrer to the indictment which may be removed by the subsequent pleadings. An indictment may, upon its face, state a fact which would be a good defence, and the defendant may in that stage of the cause, avail himself of it by demurrer; and if judgment should thereupon be rendered in his favor, and the indictment should be quashed, a new indictment may be sent up, omitting that fact, or stating other facts to show that it is no defence for that defendant; but if, without then taking advantage of the error in the indictment, the defendant proceeds to plead the matter of defence, and the United States reply matter showing that the defendant is not in a condition to avail himself of that defence, and the defendant should demur to the replication, thereby admitting the facts stated in the replication to be true, the judgment upon that demurrer must be against the defendant, because the matter of the replication admitted by the demurrer, would show that the defendant was not in a condition to avail himself of the prima facie matter of defence contained in the indictment. And if, instead of demurring to the replication, the defendant should take issue upon it, and the verdict should be against him, and he should move in arrest of judgment, the same matter would appear to the court. The whole record would be before them, and the motion in arrest must, upon that state of the record, be overruled.

This would be the result if the pleadings should be in writing and spread upon the record. But the judgment of the court must be the same, where the pleadings are ore tenus. The court is bound to take notice that the defendant, upon the plea of "not guilty" had a right to avail himself of the limitation of time if he was entitled to it; and that the United States had a right to show that he was not entitled to its benefit; and after a general verdict the court is bound to presume that the parties respectively availed themselves of their rights; and that every thing was alleged and proved which they had a right to allege, and could prove under that issue. If, from accident or ignorance of his rights, the defendant should have been prevented from asserting and using his right, it might be the ground of a motion for a new trial. But after a verdict upon the general issue, the court is bound to presume that the jury had considered and acted upon every defence which the defendant could make under that issue, and upon every matter which either of the parties could lawfully have given in evidence upon the trial. As the verdict was against the defendant, and as the jury could not have found such a verdict, unless they had found that the defendant was a person fleeing from justice, the court must presume that they were satisfied of that fact by the evidence. Thus, in the case of Lee v. Clarke, 2 East, 333, in error from the court of common pleas, in an action of debt for a penalty given by the game-laws for using a certain engine to kill and destroy the game of the kingdom, not having lawful authority so to do, the declaration stated that the offence was committed "within the space of six calendar months, to wit, on the 21st of January, 1801, whereas, the limitation by the statute of 2 Geo. III. c. 19, § 6, was six months, which, at common law, except in mercantile transactions, means six lunar months. Upon the plea of nil debet the verdict was for the plaintiff, and this matter among others, was assigned for error. A previous statute (26 Geo. II. c. 2), had limited the time for prosecution to the end of the second term after the offence committed. Lord Ellenborough, during the argument said, "Notwithstanding the allegation that the offence was committed within six calendar months, &c., yet if it were not committed within the time prescribed by the statute, the plaintiff must have been nonsuited;" thereby admitting that the defendant might avail himself of the limitation of time upon the general issue; and that if the plaintiff had not proved the offence to have been committed within the time limited by the statute, he must have been nonsuited in that action of debt, and, of course, if it had been a criminal prosecution by indictment, the defendant must have been acquitted. Lawrence, J., also said: "The time having elapsed would have been evidence for the defendant on the plea of nil debet. The argument goes the

length of assuming that, if no time whatever had been alleged. it would have been sufficient for the plaintiff. at nisi prius, to have proved the offence committed at any time before the action commenced; which cannot be pretended." The counsel for the defendant in error said: "But the answer already given by the court is sufficient; the allegation itself was unnecessary, and may be rejected; and after verdict the court will presume that the fact was proved within time." After the argument was closed, Lord Ellenborough said: "To some of the errors assigned, an answer has already been given by the court; such as those which respect the allegation of the time within which the action was commenced being stated to be within six calendar, instead of lunar months. and not stated to be within two terms. The allegations were not material; and we cannot presume that the fact was not proved to have happened within the time prescribed by law for the commencement of the suit."

So in the case of Pugh v. Robinson, 1 Term R. 116, which was a case of special demurrer to the declaration, on the ground that it appeared, upon the record, that the suit was brought before the cause of action accrued, the court overruled the demurrer, because that fact did not appear upon the record. Mr. Law, (afterwards Lord Ellenborough,) in support of the demurrer, said:. "Though on motions in arrest of judgment, and on trials at nisi prius, the court will inquire when the bill was actually filed, yet they will not on demurrer, where such inquiry is precluded." If this be the law, and it was an admission by eminent counsel, there is a difference between a demurrer and a motion in arrest of judgment. Upon a demurrer, the inquiry respecting a fact not appearing on the record is precluded; but may be admitted upon a motion in arrest of judgment, in some cases. But it is not necessary, in the present case, to insist upon that difference in this respect; for. after a general verdict, the court must presume that every thing in issue has been considered and decided by the jury; and every fact was in issue of which the parties could avail themselves upon the plea of "not guilty;" one of which facts was, on the part of the defendant. the limitation of time, and another of which facts was, on the part of the United States, the defendant's fleeing from justice. In the above case of Pugh v. Robinson, the promise and breach (which were the cause of action,) were. in the declaration, alleged to be on the 7th of November, 1785, which was the first day of Michaelmas term. The declaration was entitled generally of that term. The defendant demurred specially, and contended that the filing must, in law, relate to the first day of the term, and as the law knows no fractions of a day, it must relate to the first instant of that day. On the other side it was contended that the term, for the purpose of delivering the declaration, could not he considered as commencing until the sitting of the court. That this was evident on adverting to the ancient practice of the court when the parties declared ore tenus, which was minuted by the prothonotary; but, on account of the great increase of business, the present mode of delivering the declaration in writing, was substituted. That, therefore, this declaration could not be supposed to have been delivered before the sitting of the court; for, till that time, by the old practice, the party could not have declared ore tenus; and although the law does not, in general. allow fractions of a day, yet the court will take notice of their usual time of sitting, before which time the contract might have been made and broken, and the declaration be thus supported. Ashhurst, J., said: "The court ought to make any intendment against a mere captious objection. We must resort to the old practice of declaring ore tenus; and by referring to that we find that the declaration could not have been delivered till the sitting of the court, so that here the promise and the breach may well have taken place before the delivery of the declaration." On that ground the demurrer was overruled. Here, then, it is clear that the court may explain the record by reference to the ancient practice of pleading ore tenus, even in cases of demurrer; and, à fortiori, in cases of motion in arrest of judgment.

Weston v. Mason, 3 Burrows, 1725, is a strong case to show that there is a difference between a demurrer and a motion in arrest of judgment. It was an action of debt upon a bond, brought against the sureties of a sheriff's bailiff. The condition, after reciting that the sheriff had appointed the person bailiff for the hundred of East Gotson. was that, "if, therefore, he shall duly execute his office, &c.. within that hundred, and shall duly execute all warrants directed to him, and make due and sufficient return thereof, &c., then the bond to be void." Performance of the condition was pleaded. The plaintiff replied that the bailiff had not made a due return to a particular warrant directed to him. The defendant rejoined that he had; upon which issue was joined, and verdict for the plaintiff. Mr. Dunning moved in arrest of judgment, and contended that the breach assigned was not sufficient. because it did not state that the warrant was directed to the bailiff, as bailiff of that hundred, and therefore he was not obliged to return it. He cited the case of Stoughton v. Day, Aleyn, 10, and contended that it was exactly like this. except that that was a warrant on an execution, and this on . mesne process; that the condition of that bond was in the very words of this; and that upon looking into the record of that case it agreed with the present. Sir Fletcher Norton and Mr. Ashhurst said that "that case was on demurrer—this after verdict; therefore it shall be supposed that every thing necessary to maintain the action was proved." Lord Mansfield said: "A case is cited out of Aleyn, as in point; but the case out of Aleyn was upon demurrer. If it stood upon the construction

of the bond, I should have desired to consider of it; but this being in arrest of judgment, after verdict, and not on demurrer, it does not appear that it was directed to him as bailiff of the hundred." Mr. Justice Wilmot: "If it had stood upon a demurrer I should have thought the case in Aleyn to have been in point." "But upon this record we cannot take the warrant to be directed to him otherwise than as bailiff of the hundred; and by joining issue on the fact of returning it, he admits that it was not directed to him generally. And since he has admitted the execution of it, we cannot intend that it was not directed to him as bailiff of the hundred, in order to arrest a judgment." Mr. Justice Yates: "The case in Aleyn was determined on a demurrer. Therefore that case does not affect this." Mr. Justice Aston concurred, and the judgment was not arrested. Here, then, is a case where, if the defendant had demurred to the replication, the judgment would have been in his favor; but as he pleaded over, and took no exception until after verdict against him, the judgment could not be arrested, although the replication was still as defective after verdict as it was before. And the reason is, that after verdict, every thing which the plaintiff could have proved, under the issue, in support of the verdict, must be presumed to have been proved. This is evidently the spirit and reason of the case.

In the case of Henry H. White, now before us, the parties had clearly a right, under the general issue, to litigate the question of limitation of time. The defendant had a right to rely on the statute; and the United States had a right to show that the defendant was a "person fleeing from justice," and therefore not entitled to the benefit of the limitation. 1 Chit. 470, 475, 626. All this must, or might, have been before the jury; and as they found a general verdict against the defendant, the court is bound to presume that every thing which was necessary to support the verdict, and which could be proved under the issue, was proved to their satisfaction. There can be no doubt that the United States, upon the issue of not guilty, might have given evidence to show that the defendant was a person fleeing from justice; and if that fact was proved, it entirely removed the ground of demurrer which originally existed in the indictment, namely, that the indictment was not found within two years after the offence was committed; and as the court is now bound to presume, from the verdict, that the fact of the defendant's fleeing from justice was fully proved, there can no longer be a pretence for arresting the judgment upon that ground. A defendant who is permitted to avail himself of the benefit of the statute of limitations upon the general issue, in a criminal cause, ought not, thereby, to be placed in a better condition than if he had pleaded it specially. If he had so pleaded it, the facts would have been spread upon the record to show that he was not entitled to its benefit; and then upon the whole record the judgment could not be arrested. If he chooses to rely upon the statute, without pleading it, he must take it with all its burdens, and liable to all its provisos and exceptions. He cannot be permitted to have the full benefit of the statute, upon the general issue, and when the verdict is against him, arrest the judgment, because he had not pleaded it specially.

The defendant's counsel seemed to rely much upon the dicta of the supreme court of the United States in the case of Piatt v. Vattier, 9 Pet. [34 U. S.] 415. But those dicta are only a confirmation of the general maxim in courts of equity that the decree must be secundum allegata et probata. In those courts, proofs without allegations are quite as unavailable as allegations without proofs. But in a criminal case the defendant is permitted to prove, upon the general issue, matter of defence not specially alleged, and the United States to rebut the same by evidence, without any written special replication. It is a question of practice rather than of law, and the difference of jurisdiction causes a difference in practice.

Upon the whole, I am clearly of opinion that, in the present state of the record, the judgment cannot be arrested for the cause assigned.

THRUSTON, Circuit Judge, concurred. MORSELL, Circuit Judge, dissented.

The motion in arrest of judgment was overruled, and the defendant sentenced to seven years imprisonment and labor in the penitentiary.