THE HOME INSURANCE COMPANY OF NEW YORK, plaintiff in error, *vs.* THE CITY COUNCIL OF AUGUSTA, defendant in error.

1. A license is a right granted by some competent authority to do an act which, without such authority, would be illegal.

2. The tax called a "license tax," imposed by the City Council of Augusta, by the ordinance of January 5th, 1874, upon insurance companies doing business within the city, is a tax, and not a license.

3. The City Council of Augusta has power, under the charter of the city, to tax occupations, businesses, etc., and a foreign corporation which has an agency and a regular agent for the purpose of transacting its usual business within the city, is liable to be taxed.

4. A tax on occupations, businesses, etc., is not, in legal contemplation, a tax on property, so as to be subject to the *ad valorem* and uniformity rules of taxation, prescribed by the Constitution, and therefore a tax on fire insurance companies, different from what is imposed on life insurance companies, does not make the tax obnoxious to any constitutional requirement.

License. Tax. Foreign corporations. Constitutional law. Before Judge GIBSON. Richmond county. At Chambers. May 9th, 1874.

On January 5th, 1874, the City Council of Augusta passed the following ordinance:

"AN ORDINANCE to amend an Ordinance entitled 'An Ordinance to assess and levy taxes for the support of the municipal government of Augusta,' etc.

"SECTION I. *Be it ordained by the City Council of Augusta, and it is hereby ordained by the authority of the same,* That from and after the passage of this ordinance, the annual license tax on insurance companies shall be as follows : 1. On each and every life insurance company located, having an office or doing business, within the city of Augusta, $100 00. 2. On each and every fire, marine or accidental insurance company located, having an office or doing business, within the city of Augusta, $250 00."

On April 4th, 1874, the Home Insurance Company of New York filed its bill to enjoin the collection of the license tax as-

sessed in section one of this ordinance. The bill states that the Home Insurance Company of New York is a fire insurance company, incorporated under the laws of the State of New York, and that it was, on the 1st of January, 1874, and thence continued to be, and now (for the year 1874 and sixty days thereafter) is, authorized to transact business of insurance in the State of Georgia, under an Act of the General Assembly of Georgia, entitled "An Act to regulate insurance business and insurance agencies in the State of Georgia," approved March 19, 1869, and commonly known as the Insurance Act, and that under such authorization it was, on the 1st of January, 1874, and has since been, and now is, transacting said business in Augusta. The bill then sets forth the ordinance above cited, and charges that so much thereof as assesses a license tax on fire insurance companies is illegal, null and void, for these reasons: that the City Council of Augusta has no right to assess any tax on any incorporated company doing business in that city; that if said Council ever had such authority, it was taken away by the Insurance Act aforesaid; that the ordinance is repugnant to the Constitution and laws of the land; is in restraint of trade; is unreasonable, unfair, partial and oppressive; is in direct opposition to a general statute, to-wit: the Insurance Act aforesaid; is in derogation of common right; contravenes the public policy of the State; virtually imposes a double tax; uses the police power for revenue; violates the Constitution of the State by specially varying a general law without the free consent, in writing, of those to be affected thereby, and by taking private property for public use without just compensation; and violates the Constitution of the United States by impairing the obligation of that contract between the company and the State of Georgia, whereby the company has authority to transact business of insurance in said State. The bill then proceeds to charge that none of these objections are obviated or avoided by the fourth section of an Act of the General Assembly of Georgia, entitled "An Act to authorize the City Council of Augusta to fix a penalty for failure to make tax returns or pay the same, and to en-

force the collection of the same by execution," approved February 26, 1874, which section reads as follows:

"SECTION IV. *Be it further enacted by the authority aforesaid,* That all ordinances heretofore passed by the City Council of Augusta for the levying, assessing and collecting any taxes for the support of said municipal government for the year 1874, be, and the same are hereby declared to be of full force and effect until altered, changed, modified or repealed by said City Council."

The bill charges that said Act of February 26, 1874, is, in this fourth section, null and void, as containing matter different from that expressed in the title thereof; as impairing the obligation of that contract between complainant and the State of Georgia, whereby complainant received authority to transact business in Georgia; as specially varying a general law without the free consent, in writing, of those to be affected thereby; as conferring upon a municipal corporation power to repeal a general State law; as validating penal ordinances, and hence being an *ex post facto* enactment; as being a retrospective Act, divesting complainant of previously accruing rights; and as partial, unequal, oppressive, and contrary to good faith, good conscience, fair dealing and natural justice. The bill then sets forth that a large number of fire insurance companies doing business in Augusta coincide in these views, and that consultation has been had by and between these companies and complainant, and, in pursuance of an understanding arrived at upon such conference, complainant brings this bill.

Prays that the City Council of Augusta be enjoined from collecting the license tax assessed in section one of the ordinance of January 5th, 1874, on complainant.

An amendment to the bill sets forth that the license tax assessed by said ordinance on insurance companies is made payable by the City Council of Augusta unto and at the office of the collector and treasurer of the city of Augusta, and several companies doing business in said city have paid

such license tax, among others the Insurance Company of North America, and that record of such payment is kept in a book in the collector and treasurer's office, called "The License Book for 1874," and in the same book are kept the record of license fees paid by peddlers, barbers, green grocers, and others required by the City Council to purchase, annually, the privilege of doing business; that on each of these payments, whether by insurance companies, organ grinders, or others required to take out license, a coupon is cut from a "stub" or memorandum in said book, bearing the same date, name, number, amount and description as in the case of a check book, and that the form of the coupon in each case is as follows:

| No......        CITY BUSINESS LICENSE. |
|---|
| Augusta, Ga.,..................  ......18.... |
| Received of.......................................................................Dollars |
| 100 |
| For License as................... ...... .......... ..... ......... ...... ...... .................... .......... |
| at No......................street, which entitles.................................to carry |
| on said business until the thirty-first day of December next. |
| $.......  ......                      ......................  ............ |
|                                          *Collector and Treasurer C. A.* |

In its answer to the bill, the City Council of Augusta prays that complainant be put upon legal proof of having received authority, under the Insurance Act aforesaid, to transact business of insurance in Georgia; admits the passage of the ordinance complained of, and avers it to be legal and valid, and not in violation of any law of the State or of the United States, nor of the public policy of either; charges that the fire insurance companies of Augusta have recently raised their rates from fifty to three hundred per cent., and the license tax is therefore not unreasonably or unjustly high; claims that the taxing power of the City Council, as regards insurance companies, is not exhausted by the imposition of a tax on their gross premiums; says that the Legislature, by Act of February 26th, 1874, confirmed and validated the ordinance com-

plained of; and states "that within the jurisdiction of said city, and operating upon the subjects of taxation, the rate of taxation to be imposed by said City Council, is within their discretion, without liability to any Court or other authority except their constituency." In an amendatory answer the City Council admits the correctness of all of complainant's statements relative to the license book kept at the collector and treasurer's office, but claims that the form of coupon was adopted by the collector and treasurer on his own mere motion and for his own convenience, and that such coupon is really a mere receipt for a tax, and that licenses proper are only issued in Augusta by the clerk of Council.

An affidavit of the Mayor of Augusta, to the effect that the collector and treasurer adopted the form of the license book for his own convenience, accompanies the amendatory answer.

The Chancellor refused the injunction, and complainant excepted.

SALEM DUTCHER, for plaintiff in error.

The ordinance in question imposes either a tax or a license fee, and in either event is void. If a tax—

1st. The taxing power of the City of Augusta extends only to "inhabitants" of or "taxable property" within that city : 5 Ga., 561; 26 *Ibid.*, 651.

2d. Plaintiff, being an incorporated company, is not an "inhabitant" of Augusta: 14 Ga., 327; 17 *Ibid.*, 330; 28 *Ibid.*, 121.

3d. Nor "taxable property" within Augusta : 37 Ga., 620.

4th. If a tax on property, this is illegal, as being neither *ad valorem* nor uniform : Const., Art. I., sec. 27 ; 41 Ga., 21 ; 44 *Ibid.*, 394; 47 *Ibid.*, 562.

5th. If a special tax on business, this is illegal, one such tax being already imposed on plaintiff by Council : 24 La. Ann, 112.

1st. If a license fee the City Council of Augusta has no authority to license insurance companies: 30 Ga., 679; 42 *Ib.*, 325; 19 Minn., 267.

2d. The ordinance assumes to regulate in one way that which the State has, by general law, regulated in another, and is therefore repugnant to statute and so void: Dudley's Rep., 30; 4 Ga., 509; 18 *Ib.*, 586; 21 *Ib.*, 80; 29 *Ib.*, 56; 30 *Ib.*, 679.

3d. The State having licensed plaintiff, the city cannot require license from itself as a condition precedent to the lawful exercise in the city of the right conferred on plaintiff by the State: 5 Ga.. 447; 29 *Ib.*, 333; 36 *Ib.*, 460.

The ordinance is not validated by the fourth section of the Act of February 29th, 1874.　Said Act in that section is void:

1st. As impairing the obligation of contract: 5 Ga., 447; 10 *Ib.*, 190 (5); 12 *Ib.*, 239; 14 *Ib.*, 447; 45 *Ib.*, 331; Rerick *vs.* Kern, 14 Serg. & Rawle, 267 (2 Am. Leading Cases, 733;) State Bank of Ohio *vs.* Knoop, 16 How., 386; State *vs.* Schlien, 3 Heiskell, Tenn., 281; Minot *vs* The P. W. & B. R. R. Co., Am. Law Times, December, 1870, page 196.

2d. As containing matter different from that expressed in title: 4 Ga., 26; 6 *Ib*,, 21; 12 *Ib.*, 31 *Ib.*, 69; Const., Art. III., sections 4, 5.

3d. As specially varying a general law: Const., Art. I., section 26.

4th. As empowering a City Council to repeal a State law: 12 Ga., 404 (5.)

J. C. C. BLACK; H. CLAY FOSTER, for defendant.

By section three of the Act of incorporation, the City Council of Augusta has authority to make such assessments *on the inhabitants of Augusta*, or those who hold taxable property within the same, * * as shall appear expedient, etc: See charter, Act of 1798, section 3; see Act of December 24th, 1835; 37 Ga., 598; 47 *Ibid.*, 562.

A corporation is an inhabitant within the meaning of the charter: Bank of the United States *vs.* Devereux, 5 Cranch, 89, 197; Beaston *vs.* The Farmers' Bank of Delaware, 12 Peters, 102, 134; The Louisville, Cincinnati and Charleston Railroad Company *vs.* Thomas W. Letson, 2 Howard, 497—

last part of the decision; The People *vs.* The Utica Insurance Company, 15 Johns, 382; The South Carolina Railroad Company *vs.* McDonald, 5 Georgia R., 341; Cromwell *vs.* Charleston Insurance and Trust Company, 2 Richardson, S. C., 512; Glaize *vs.* South Carolina Railroad Company, 1 Strobhart's Law Reports, page 70. "Person" includes a corporation: Code, section 5. Are not corporations included in the term "inhabitants" in sections 3 and 7 of the Code.

The term "taxable property" embraces every subject of taxation not exempted by law from taxation: City Council of Charleston *vs.* Condy, 4 Richardson's Law Reports, 254; State *vs.* City Council of Charleston, 5 *Ibid.*, 561–4; State *vs.* City Council, 10 *Ibid.*, 240.

The tax in question is not such a tax upon property as must be *ad valorem:* 42 Georgia., 596; John A. Bohler, tax collector, *vs.* E. R. Scneider *et al.*, decided at July term, 1873; McWilliams & Company *vs.* Rome, decided at the present term.

In the case of the City Council of Augusta *vs.* Walton & Walton, assignees, etc., 37 Georgia, 620, that was a tax on the franchise, the banks having suspended business, and the decision was put upon the ground that, under the law as it then was, only the capital of incorporated companies was taxable.

The tax Acts of 1873, 1874, tax not only the premiums received by insurance companies, but the agents of all companies: See Act 1873, sections 2 and 4; Act of 1874, sections 2 and 4.

The State taxes occupations and professions, as attorneys, doctors, and others, and also sewing machine companies: See Tax Acts 1868, 1869, 1873, 1874. An occupation or business is taxable property under our law: See above Acts, and 42 Georgia, 599; and this being so, no special authority to levy such a tax is necessary: 47 Georgia, 562.

This case is clearly distinguishable from the Charleston case, reported in 36 Georgia, 460. There is nothing in the record in this case to show that this company ever complied with the Act of 1869 and was licensed by the State.

The Home Insurance Company, etc., *vs.* The City Council of Augusta.

TRIPPE, Judge.

1. There is a clear distinction recognized between a license, granted or required as a condition precedent before a certain thing can be done, and a tax assessed on the business which that license may authorize one to engage in : 42 *Georgia*, 596. A license is a right granted by some competent authority to do an act which, without such license, would be illegal. A tax is a rate or sum of money assessed on the person, property, etc., of the citizen : Bouv. L. D.; 36 *Georgia*, 460. A license is issued under the police power of the authority which grants it. If the fee required for the license is intended for revenue, its exaction is an exercise of the power of taxation : Cooley's Const. Lim., 201. The tax assessed upon complainant by the City Council of Augusta, by the ordinance of January 5th, 1874, although called a "license tax," is more properly a tax than a license fee, or a fee exacted in order to secure the right to engage in a business which, without paying for and obtaining such authority, would be illegal. The title of the ordinance is, "An ordinance to amend an ordinance to assess and levy taxes for the support of the municipal government of Augusta," etc. The amended ordinance has these further words in its title, " and for the payment of the interest on the funded debt of said city." It is true, this last mentioned ordinance, which is so amended, refers to the " subjects and rates of taxation and license;" but by referring to the ordinance of December 28th, 1872, entitled "An ordinance to fix the annual and specific taxes of the city of Augusta," etc., and which was continued in force by said amended ordinance, it will be seen that there was a special tax of $100 00 assessed upon such companies as that of complainants. This is the first ordinance, so far as the record shows, assessing such a tax. In that ordinance, both in the title and the enacting clause, it is called a tax. In the second and third sections, it may be that a license is provided for in the cases of two classes of business, and in those sections they are denominated licenses ; but the assessment made by it on insurance companies is clearly a

tax. If not, the whole ordinance is not what its title and body purport it to be, and is only a series of provisions for licenses. This ordinance, as before stated, was continued in force by the one of December 23d, 1873, and this last is the one which was amended by the ordinance of January, 1874, against which complaint is made.

2. No penalty has been imposed on complainant for non-payment of the "license tax," or for engaging in business before it was paid, or without a license. No complaint is made for the purpose of arresting proceedings of that character, but the objection is, that the City Council cannot require complainant either to take out a license or to pay any tax to the city; that, having obtained the right to transact its business by the authority of the State, it is subject to no further liability, either as a condition precedent to the exercise of such right, or as a tax upon it after it has engaged in such business. Had it been required by this ordinance that complainant should procure a license before it could transact its business, and a penalty had been imposed for failing so to do, and the complaint was against the enforcement of the penalty, a different question, under the decisions of this Court, would have been presented. But there is a plain distinction between this case and that of the *Mayor, etc., of Savannah vs. Charlton*, 36 *Georgia*, 460. There the contest was as to the right of the city to impose upon Dr. Charlton *the penalty* prescribed by the ordinance for practicing as a physician without taking out a license from the city. It is stated in the decision that the physician was "not contesting the authority of the city to tax him for practicing his profession; what he contends for is, that the city shall not make that illegal which, by the law of the State, is legal." And it is immediately added : "We see no good reason why the city may not tax the practice of any profession within the corporate limits of the city." This much, with reference to the position assumed for plaintiff in error, that under the Act of March 19th, 1869, it having obtained from the Comptroller General the "certificate of authority to transact business of insurance in this State," no other liability

or tax could be imposed.    It may further be said that if this be so, then the State would be equally bound by its own contract, and would, no more than a municipal corporation, have power to assess any further tax upon such companies, or upon any person to whom a license had been granted by its authority to practice a profession or engage in any business.    And yet the lawyer, the physician, and many others, have licenses granted by the State, or directly by its authority—have paid the fee for the same, and have ever been held subject to be taxed on the very business or profession covered by that license.    Probably not a general tax Act has been passed for half a century, or longer, which has not done this very thing. And it may be added that the Legislature never thought that the regulations for insurance business and insurance companies prescribed by the Act of 1869, deprived it of the power of taxing such business or companies, for it has uniformly, since that time, as well as before, assessed a tax on both.    And, indeed, on the 18th of March, 1869, an Act was approved levying a specific tax on all premiums received by all insurance companies doing business in this State, both home and foreign : See *Burch et al. vs. The Mayor, etc., of Savannah*, 42 *Georgia*, 596.

Complainant, admitting the power in the State to tax business, callings, etc., and also in certain municipal corporations, to levy the same under the special terms of their charters, yet denies that the charter of the city of Augusta confers this power on the Mayor and City Council.    The words of the charter are, " to make such assessments on the inhabitants of Augusta, or those who hold taxable property within the same, as may seem expedient," etc.    What is the meaning of the words, "assessments on the inhabitants?"    It certainly authorizes a tax on property.    Is it limited to that ?    If so, why ? Businesses, occupations and professions are as equally the subject of taxation as property, and have been as regularly taxed as any real or personal property: Cooley's Const. Lim., 479. If the "assessment" is not limited to the person, such as a capitation or poll tax, what is there to confine it to any one

subject matter of taxation? It has always been the rule of the Legislature of this State to assess a tax on property, on business, and also a capitation tax; and when taxation is referred to, the power to "make assessments" includes the power to assess all three, unless there be some other provision to limit it. If it does not extend to the power to levy a tax on business, etc., then it would, in this case, be restricted altogether to property. For, by the Constitution of 1868, there can be but one poll tax, and that to the amount of $1 00, and only for educational purposes. This is levied by the State. The State does not tax income, and it has been held that, therefore, a municipal corporation cannot: 8 *Georgia*, 23. In the case just referred to, *The Mayor, etc., of Savannah vs. Hartridge*, 8 *Georgia*, 23, it was ruled that "the history of the legislation of the State, in reference to a particular subject matter of taxation, may be referred to as tending to aid in the construction to be given to the statute; and where the State has never taxed income, the power to do so in a corporation must appear by express words or unavoidable implication." Hence, though the statute in that case gave the city of Savannah authority to tax "real and personal estate," yet, in getting at the meaning of the Act, it was held that, as the State had never made income a source of revenue as taxable, it was not the intention of the Legislature to give the power to a subordinate authority. If the absence of such a custom or practice on the part of the Legislature was a criterion in construing that statute, would not the fact that the legislation of the State had fixed a contrary policy in the matter of taxing occupations, tend equally to aid in reaching the meaning of the general words, "power to make assessments on the inhabitants," etc., when used in a city charter?

3. But it is further objected by plaintiff in error that a foreign corporation, although it has officers, and an office, and is doing business in the city of Augusta, is not an "inhabitant" in the true intent and meaning of that word as used in the charter, and therefore not liable to be taxed. We are aware of the thorough discussion before many Courts, the question

whether a corporation is an "inhabitant," has undergone. Lord Coke, 2 Ins., 703, says, "Every corporation and body politic residing in any county, riding, city or town corporate, or having lands or tenements in any shire, etc., *quæ propriis manibus et sumptibus possident et habent*, are said to be inhabitants there, within the purview of this statute." He referred to the statute of Henry VIII., concerning bridges and highways, which enacted that bridges and highways shall be made and repaired by "the inhabitants of the city, shire or riding," and that the Justices shall have power to tax every "inhabitant of such city," and the collectors may "distrain every such inhabitant as shall be taxed and refuse payment thereof, in his lands, goods and chattels." In the case of the King *vs.* Gardner, Couper, 79, a corporation was decided to come within the description of "occupiers or inhabitants." In Beaston *vs.* The Farmers' Bank of Delaware, 2 Peters, 102, the Supreme Court of the United States says, "that corporations are to be deemed and considered as persons, when the circumstances in which they are placed are identical with those of natural persons, expressly included in a statute." And this rule was recognized in *South Carolina Railroad Company vs. McDonald*, 5 *Georgia*, 531. See Louisville Railroad Company *vs.* Letson, 2 Howard, 497 ; modifying the decisions in Bank of the United States *vs.* Deveaux, 5 Cranch, 84, and Strawbridge *vs.* Curtis, 3 Cranch, 267 ; see, also, The People *vs.* The Utica Insurance Company, 15 Johns, 358. In *Davis and Redding vs. The Central Railroad and Banking Company*, the judgment of the Court was, not that a corporation was not an inhabitant, but that where a charter of a railroad provided that "the principal office of the company shall be located at Savannah, with subordinate officers or agencies at Macon and such other places as the board of directors shall determine, and all elections and meetings of stockholders shall be held at such principal office only," it was said that "this is not the same as would have been a provision that the corporation shall be established at Savannah." The case arose upon the question of the unconstitutionality of an

Act of the Legislature making the road liable to be sued for killing live stock in the county where the damage was done. It was held that the Act was constitutional, and that the Legislature had power over the question of what shall be the place of residence of a corporation. Judge BENNING, in his opinion in that case, seems to object pretty strongly to the English rule as given by Coke, but stated that it was not necessary to hold that it was not the law in this State, in order to reach the conclusion to which the Court came. Indeed all the cases either directly or indirectly admit that a corporation is an inhabitant for the purposes of taxation. Nor is the case in 5 Cranch, *supra,* in conflict with this, for in that it is said of a corporation, " this ideal existence is considered as an inhabitant where the general spirit and purposes of the law require it." This is substantially what was said in 2 Peters, *supra,* and to show the force that was given to it, it is quoted in the opinion in Louisville Railroad Company *vs.* Letson, *supra,* and the question immediately put, " if it be so for the purposes of taxation, why is not for the purpose of a suit, etc. ?" and then it is added, " certainly the spirit and purposes of the law require it." The fact that complainant is a foreign corporation, does not affect the question as to its liability to taxation. It may contract in this State—purchase, and the State could authorize it to hold real estate: The *Union Branch Railroad Company vs. The East Tennessee and Georgia Railroad Company,* 14 *Georgia,* 327. In the Bank of Augusta *vs.* Earle, 13 Peters, 588, TANEY, Chief Justice, says, " it is sufficient that its existence as an artificial person in the State of its creation is acknowledged and recognized by the law of the nation where the dealing takes place ; and that it is permitted by the law of that place to exercise there the powers with which it is endowed." This was said with reference to the rights which a corporation may enjoy outside of the State of its creation. If it held property in another State, would not that property be subject to be taxed by that State, and equally with other similar property by the municipal corporation within whose limits the property was? If

it enjoy other privileges or rights within that same municipal corporation, is it not liable to the same taxes as other inhabitants? We think that upon principle and authority, it is.

4. It was further objected by complainant that the tax upon fire insurance companies being different from that on life insurance companies, made it obnoxious to that provision of the Constitution which requires that "taxation on property shall be *ad valorem* only, and uniform on all species of property taxed." In the cases of *Burch vs. The Mayor, etc., of Savannah, supra, and Bohler vs. Schneider*, 49 *Georgia*, 195, it was held that a tax on professions, business, etc., was not a tax on property, so as to be subject to the constitutional requirements of uniformity, and that it must be *ad valorem*. In the case of *The Bank of the State of Georgia vs. The Mayor, etc., of Savannah, Dudley's Reports*, 130, it is said, "Every man's private business, pursuit or calling, are things in which he has an interest, and many species of employments are legitimate subjects of taxation, and are taxed. Still, they are not, strictly speaking, property. They are the means from which income is derived—property made. But there is a clear distinction between the employment and the income or profits." The tax Acts of the State, assessing taxes on professions, etc., vary the tax from ten dollars to ten or twenty times that sum. And this has been so in every tax Act which has been passed since the uniformity and *ad valorem* rule has been in the Constitution. This contemporaneous, unbroken, practical exposition of the meaning of the Constitution by all departments of the State government, should not be disregarded in the search for the true interpretation of the provisions we are considering. By the light of this and the principles and authorities cited, we conclude that the Court below did not err in refusing the injunction prayed for.

Judgment affirmed.